UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Not for Publication**

NICHOLAS E. PURPURA,

    *Plaintiffs*,

v.

JP MORGAN CHASE, JAMES DIMON, DEAN COOPER, ERICK CLARK, CHASE HOME FINANCE, LLC, GLENN J. MOURIDY, CHASE HOME FINANCE, LLC, JANE DOE, AND JOHN DOE, ET AL.

    *Defendants*.

Civil Action No. 16-3765

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    The present matter comes before the Court on Defendants'[1] motion to dismiss the complaint pursuant to Federal Rule 12(b)(1) for lack of jurisdiction and Federal Rule 12(b)(6) for failure to state a claim. *Pro Se* Plaintiff Nicholas E. Purpura ("Plaintiff") opposes the motion.[2] This case concerns allegations that Defendants do not own Plaintiff's mortgage since the mortgage was executed with Washington Mutual Bank ("WaMu"), which was subsequently acquired by Defendants. This motion was decided without oral argument pursuant to Federal Rule of Civil

---

[1] Defendants include JPMorgan Chase & Co. ("Chase"), James Dimon, Dean Cooper, Erick Clark, Glenn J. Mouridy, Chase Home Finance, LLC, Jane Doe, and John Doe, *et al* (collectively, "Defendants").

[2] Defendants' brief in support of its motion to dismiss the complaint will be referred to hereinafter as "Def. Br." (D.E. 23); Plaintiff's opposition to Defendants' motion to dismiss will be referred to "Pl. Opp'n" (D.E. 25); and Defendants' reply brief will be referred to "Def. R.Br." (D.E. 30).

Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions and grants Defendants' motion.

## I. BACKGROUND

The following facts are derived from Plaintiff's Complaint ("Compl."), as well as the exhibits attached to the complaint and to Defendants' motion to dismiss.[3] On June 8, 2005, Plaintiff executed a Note and Mortgage in conjunction with a loan from WaMu. Compl. at 5. According to Defendants, the Note and Mortgage was in the amount of $633,750.00 (the "Loan"). Def. Br., Ex. D. On September 25, 2008, Chase acquired certain assets and liability of WaMu, including Plaintiff's Loan. Compl. at 1. Plaintiff claims that his "mortgage was a nullity" when he obtained it from WaMu in June 2005. *Id.* at 23. Specifically, Plaintiff claims that "WAMU/Chase had ceased to exist in April 2005" and that "[WaMu] named as 'the Lender' on that mortgage was a fictitious entity engaged in fraud with [Plaintiff]." *Id.* at 5.

In 2009, Plaintiff alleges that he "was no longer able to continue making payments on the [allegedly] fraudulent loan." *Id.* at 21. As a result, Plaintiff claims that he was "forced to agree to a 'modification' of the former mortgage agreement." *Id.* Defendants state that as a result of Plaintiff's default on or about September 1, 2008, Chase brought a foreclosure action in state court. Def. Br. at 3. As a resolution to that case, Plaintiff and Chase executed a Loan Modification

---

[3] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)

2

Agreement. Compl. at 22; Def. Br. at 4 (stating that the Loan Modification Agreement was executed on July 15, 2010). Plaintiff also alleges that, when he was in default, Chase/WAMU used "acts of harassment, oppression, and abusive conduct . . . to extort and coerce [him]" and to threaten "to illegally confiscate [his] home." Compl. at 11.

Since the Loan Modification, Defendants contend that Plaintiff has paid Chase monthly. Def. Br. at 7. Plaintiff also indicates that "[he] has not defaulted." Compl. at 24. However, Plaintiff alleges that his mortgage was "fraud from its inception." Compl. at 7. Additionally, according to Plaintiff, his mortgage was fraudulently obtained by Chase when it bought WaMu. *Id.* at 5-6, 21. As a result, Plaintiff claims that there is no entity who has a right to Plaintiff's mortgage payments. *Id.* at 23.

Plaintiff concludes that "[he] has suffered grievous damage by being forced to sign fraudulent documents under false pretense[s] with WAMU/Chase in 2005, and then again, with Chase/WAMU in 2009." *Id.* at 3. Plaintiff indicates that "Defendant's actions have resulted in severe emotional and physical distress" which "have caused Plaintiff to suffer a heart attack, shingles and other severe consequences to health." *Id.* at 26. Additionally, Plaintiff maintains that Chase/WAMU "must grant clear ownership of the subject property to the Plaintiff, and refund every payment, with interest, Plaintiff has made since the fraudulent mortgages' inceptions, beginning in June 2005, and continuing to the present." *Id.* at 10.

## II. PROCEDURAL HISTORY

Plaintiff filed his complaint on June 27, 2016. D.E. 1. Plaintiff's complaint sets forth numerous laws that Defendants have allegedly violated, including (1) "18 USC § 241: Conspiracy Against Rights;" (2) "18 USC § 242: Deprivation of Rights Under Color of Law;" (3) "18 USC §§ 1961-1965 Civil [Racketeer Influenced and Corrupt Organizations Act]" ("RICO"); (4) "28 USC

§ 1331 Federal question;" (5) "31 USC § 3729 False Claims Act" ("FCA"); (6) "15 USC § 1629 et seq. [Fair Debt Collection Practices Act]" ("FDCPA"); (7) the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"); and (8) "white-collar crime." Compl. at 4-14. In lieu of answering, Defendants filed their motion to dismiss on August 23, 2016. D.E. 23. Plaintiff opposed this motion. D.E. 25.

Defendants first argue that Plaintiff does not have standing because he has not suffered an "injury in fact." Def. Br. at 5-8. Next, Defendants contend that all claims related to the origination of the Loan are jurisdictionally precluded since Chase expressly did not assume liability from wrongdoing that occurred prior to its purchase of WaMu. *Id.* at 8-10. Additionally, Defendants argue that Plaintiff's allegations do not state a claim sufficient to withstand a motion to dismiss. *Id.* at 10-13. Furthermore, Defendants maintain that "Plaintiff's claims are untimely, are inapplicable to the case-at-bar, or simply do not exist as independent causes of action." Def. R.Br. at 1.

Plaintiff's opposition continues to allege the central allegation of his complaint – that Chase does not own his mortgage and that the assignment from WaMu to Chase was fraudulent. Pl. Opp'n. Plaintiff states that he has standing based on the "injury in fact" that "[he] has been making payments to entities not entitled to those proceeds." Pl. Opp'n at 6. Plaintiff maintains that his complaint is "extensively supported by numerous facts, as discovered and proven by Federal and State authorities and previous Courts." *Id.* at 13.

### III. STANDARD OF REVIEW

Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a

motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

Rule 12(b)(1)

In deciding a Rule 12(b)(1) motion for lack of subject matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed. A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis

for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)). When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is, by definition, a facial attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). The burden is on the Plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. *See id.* "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa.*, 757 F.3d at 360. To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' *i.e.*, an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, *i.e.*, traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Gov, of N.J.*, 730 F.3d 208, 218 (3d. Cir. 2013).

Because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds him to a less stringent standard than those filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "Court need not . . . credit a *pro se* plaintiff's 'bald assertions' or 'legal

6

conclusions.'" *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010).

## IV. DISCUSSION

<u>Standing</u>

To the extent that Plaintiff argues that the assignment of his mortgage from WaMu to Chase was invalid or "without operation in law," Plaintiff does not have standing to make this claim. Constitutional standing requires a plaintiff to establish "that he or she has suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Bauer v. Mortg. Elec. Registration Sys., Inc.*, 618 F. App'x 147, 149 (3d Cir. 2015). A borrower does not have standing to sue for an illegal assignment of his mortgage. *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (finding that borrowers have no standing to allege a defect in the assignment of their mortgages); *Perez v. Jpmorgan Chase Bank, N.A.*, No. 14-2279, 2016 WL 816752, at *3 (D.N.J. Feb. 29, 2016) ("Courts in the Third Circuit have repeatedly held mortgagors lack standing to contest the assignment of their mortgages[.]"). This is because there is no concrete injury to a borrower when their mortgage is assigned. *See Bauer*, 618 F. App'x at 149 (finding that a borrower had not suffered a "concrete injury" when he did not allege that he was required to pay his loan twice); *Rajamin*, 757 F.3d at 85 (holding that borrowers did not suffer an injury when they did not allege they had paid more than they owed and were in no imminent danger in having to pay duplicate loans).

Here, Plaintiff has not alleged a concrete injury. Importantly, Plaintiff does not allege that he ever paid Defendants more than the amount due, that he was in danger of having to make duplicate loan payments, or that there had ever been an entity other than Chase demanding payment on the loan after Chase acquired Plaintiff's Loan. *See* Pl. Opp'n at 17 ("[N]o other party has

demanded payment from Plaintiff."). Therefore, Plaintiff does not have standing to pursue any claims in which he is alleging a defect in the assignment of his loan from WaMu to Chase.[4] Nevertheless, because it is unclear whether Plaintiff's claims rest solely on the assignment of his mortgage, the Court will also analyze each of Plaintiff's claims pursuant to Federal Rule of Procedure 12(b)(6).[5]

Failure to state a claim

    a) Counts I, II, IV and VIII

Counts I, II, IV and VIII are based on statutes that do not create private rights of action or based on legal theories that are not cognizable in federal court. *See Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009) (finding no private cause of action under 18 U.S.C. § 241 and § 242); *See* 28 U.S.C. § 1331 (granting district courts federal question jurisdiction if laws arise under "the Constitution, laws, or treaties of the United States"); *Black's Law Dictionary* (10th ed. 2014) (defining white-collar crime as a colloquial term). Therefore, each of these counts is dismissed with prejudice.

    b) Count III

Count III is brought pursuant to Civil RICO, 18 USC §§ 1961-1965. Defendants argue that "there is no allegation concerning a pattern of illegal activity on the part of the Defendants."

---

[4] Plaintiff additionally raises the issue that Chase "can still foreclose on [his] mortgage[.]" Pl. Opp'n at 5. However, there is no evidence that Defendants have attempted to foreclose on Plaintiff's property, and Plaintiff cannot bring an action to prevent a speculative future event that may or may not occur.

[5] Defendant also argues that Plaintiff does not have standing to sue Chase for liabilities that arose prior to the sale of WaMu. Def. Br. at 8-10. Since it is unclear when Plaintiff is alleging that the harms arose, the Court does not decide this question at this time.

Def. Br. at 14. Plaintiff characterizes each payment to Defendants, which occur monthly, as a predicate act sufficient to state a claim under RICO. Pl. Opp'n at 19.[6]

To bring a Civil RICO claim, a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998). To establish a "pattern of racketeering," a plaintiff must allege "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *20 (D.N.J. May 2, 2013).

Here, Plaintiff's allegations stem entirely from his Loan with WaMu and then Chase. Even assuming a fraudulent scheme by Defendants, "where the defendant's actions [are] narrowly directed towards a single fraudulent goal," it is insufficient to constitute a "pattern of racketeering." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. App'x 354, 365 (3d Cir. 2010). Thus, Count III is dismissed without prejudice.

c) Count V

Count V is brought pursuant to the FCA. Defendants argue that the FCA is limited to persons who defraud the Federal Government and therefore this claim should be dismissed with prejudice. Def. Br at 16.

The Court agrees. The objective of the FCA is to "protect the funds and property of the *Government* from fraudulent claims." *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 183 (3d Cir. 2001) (emphasis added). Thus, to establish a *prima facie* FCA violation, a plaintiff must allege that "(1) the defendant presented or caused to be presented to an agent of the United States

---

[6] Defendants also raise the issue of statute of limitations under this Count as well as under the FCA. Plaintiff's opposition argues that "[t]olling renews with each monthly demand for payment," and that he was "reasonably unaware of the criminal acts committed against him." Pl. Opp'n at 24. Since the Court is dismissing these counts for other reasons, it does not reach the statute of limitations issue.

9

a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *In re Plavix Mktg., Sales Practices & Prod. Liab. Litig.*, 123 F. Supp. 3d 584, 600 (D.N.J. 2015). While a private party may bring a suit pursuant to the FCA, he must allege that there was a false statement made to the government. *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016).

Plaintiff makes no allegation of any statement made by Defendants to the government, much less a false one. Therefore, as pled, Plaintiff fails to state a claim under the FCA. In Plaintiff's opposition, he makes numerous allegations about government agencies filing suits against Defendants in the past. *See* Pl. Opp'n at 21-23. Plaintiff seems to misunderstand that he cannot use prior court cases and government actions to support his claim as it currently stands. The Court will therefore dismiss this Count without prejudice. However, from the facts alleged it does not appear that the Government was involved in any capacity with the underlying allegations. Therefore, if Plaintiff re-pleads this Count and does not provide the requisite government involvement, the Count will be dismissed with prejudice.

d) Count VI

Count VI is brought pursuant to the FDCPA. Defendants argue that this Count must be dismissed because Chase is not a "debt collector" as required by the statute. Def. Br. at 17. To state a claim under the FDCPA, Plaintiff must establish that "(1) he or she is a 'consumer' who is harmed by violations of the FDCPA; (2) the 'debt' arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a 'debt collector'; and (4) the defendant has violated, by act or omission, a provision of the FDCPA." *Block v. Seneca Mortg. Servicing*, No. 16-0449, 2016 WL 6434487, at *16 (D.N.J. Oct. 31, 2016). While a "debt collector" is broadly defined under the statute, there is an exclusion for "any officer

or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). Thus, a bank, acting as a creditor, may "collect its own debts, in its own name, without subjecting itself to the provisions of FDCPA." *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 184 (D.N.J. 2012).

Plaintiff alleges that both Chase and WaMu were fraudulently collecting his mortgage payments. However, as each bank owned his mortgage during the period they were collecting payments, they are not included in the definition of "debt collector" under the FDCPA. Plaintiff's opposition once again argues that Chase is not the owner of his debt and therefore it is not collecting its own loan when demanding payments from Plaintiff. Pl. Opp'n at 24. As stated above, Plaintiff has no standing to contest the assignment of his mortgage. He has also offered no proof of another lender owning his loan or trying to collect payments. Therefore, this claim is dismissed with prejudice.

e) Count VII

Finally, Plaintiff brings Count VII under two statutes: (1) TILA; and (2) RESPA.

Under his TILA claim, Plaintiff merely cites to 12 C.F.R. 226.25, which requires a creditor to maintain documents showing compliance with the regulations promulgated pursuant to TILA for two years "after the date disclosures are required to be made or action is required to be taken." Compl. at 13. Plaintiff does not provide any factual allegations along with the citation to this regulation. Therefore, he has not plausibly demonstrated that Defendants' violated this regulation. Thus, the TILA claim is dismissed without prejudice.

RESPA is "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). "Among other obligations, RESPA imposes a duty upon loan servicers to respond to certain inquires by customer

11

borrowers." *Hager v. CitiMortgage, Inc.*, No. 16-3348, 2017 WL 751422, at *4 (D.N.J. Feb. 27, 2017) (citing 12 U.S.C. § 2605(e)(1)(A)). To make an inquiry, a borrower must send a qualified written request ("QWR") to the servicer. 12 U.S.C. § 2605(e)(1)(A). The statute then requires a mortgage servicer to respond to a borrower's QWR within certain time limits. *Id.* To aid servicers with the task of providing consumers with timely information, RESPA's implementing regulations allow (but do not require) servicers to establish a designated address for QWRs. *See* 24 C.F.R. § 3500.21(e)(1).

The Third Circuit has not yet addressed whether failure to submit a request to the designated address is itself a sufficient basis for dismissal of a RESPA claim. Both the Second and Tenth Circuits have found that such a failure is a sufficient basis for dismissal. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014) ("[F]ailure to send the [request] to the designated address . . . does not trigger the servicer's duties under RESPA."); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013) ("Receipt at the designated address is necessary to trigger RESPA duties[.]").

There is no dispute that Plaintiff failed to mail his QWR to Chase's designated address. This Court follows the decisions of the Second and Tenth Circuits and dismisses Plaintiff's claim with prejudice. While the Second and Tenth Circuit decisions may appear somewhat draconian, their reasoning is rational. Once a borrower serves a QWR on a servicer, the servicer has only a short period of time in which to respond to that request. *See* 12 U.S.C. § 2605(e)(1)(A) (requiring a servicer to "provide a written response acknowledging receipt of the correspondence within 5 days."). Therefore, to make it feasible for servicers to comply with the quick turn-around time on requests, the regulations permit servicers to establish a designated address where the servicers will receive all requests. Additionally, this holding does not prevent Plaintiff from re-serving Chase

with a QWR to the designated address, and if he does not receive a proper response, re-filing a claim. Thus, because Plaintiff did not mail his QWR to Chase's proper address, this Count is dismissed with prejudice.

Defendants' motion to dismiss is therefore granted. Counts I, II, IV, V and VIII are dismissed with prejudice. Counts III and VI are dismissed without prejudice. Count VII is dismissed without prejudice as to the TILA claim and with prejudice as to the RESPA claim. Thus, if Plaintiff chooses, he may re-plead Counts III, VI and VII (as to TILA only) against Defendants. If he does so, Plaintiff must address the issues the Court raised with respect to each count.

## V. CONCLUSION

In sum, the Court **GRANTS** Defendants' motion. Counts I, II, IV, V and VIII of Plaintiff's complaint are dismissed with prejudice. Counts III and VI are dismissed without prejudice. Count VII is dismissed without prejudice as to the TILA claim and with prejudice as to the RESPA claim. Plaintiff has thirty (30) days to file an amended complaint as to those counts dismissed without prejudice, if he so chooses, consistent with this Opinion. If Plaintiff does not do so, this matter will be dismissed with prejudice, which means that Plaintiff will not be able to bring another suit against Defendants based on the facts set forth in his complaint. An appropriate order accompanies this opinion.

**Date:** March 24, 2017

_____
JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE