# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NICHOLAS E. PURPURA,

    *Plaintiff,*

  v.

JP MORGAN CHASE, ET AL.

    *Defendants.*

Civil Action No. 16-3765

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case arises from Plaintiff's claims that assignments of his 2005 mortgage loan, as well as his 2008 loan modification, were unlawful. The Court previously dismissed Plaintiff's first Complaint without prejudice. Plaintiff Nicholas Purpura ("Plaintiff") then filed an Amended Complaint. D.E. 44. The present matter comes before the Court on Defendants'[1] motion to dismiss Plaintiff's Amended Complaint.[2] D.E. 47. Defendants move to dismiss with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). This motion was decided without oral argument pursuant

---

[1] Defendants include JPMorgan Chase & Co. ("Chase"), James Dimon, Dean Cooper, Erick Clark, Glenn J. Mouridy, Chase Home Finance, LLC, Jane Doe, and John Doe, *et al.* (collectively, "Defendants").

[2] Plaintiff's *pro se* Amended Complaint will be referred to hereinafter as "Am. Compl." (D.E. 44); Defendants' brief in support of its motion to dismiss the amended complaint will be referred to hereinafter as "Defs. Br." (D.E. 47); Plaintiff's brief in opposition will be referred to hereinafter as "Pl. Opp. Br." (D.E. 48); Defendants' reply will be referred to hereinafter as "Defs. Reply" (D.E. 49); Plaintiff's sur-reply will be referred to hereinafter as "Pl. Resp." (D.E. 50); Plaintiff's motion for immediate judicial intervention will be referred to hereinafter as "Pl. Motion" (D.E. 52); Defendants' response in opposition to Plaintiff's motion will be referred to hereinafter as "Defs. Resp. Pl. Motion" (D.E. 53).

to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions and grants Defendants' motion to dismiss all counts with prejudice.

## I. BACKGROUND[3]

On June 8, 2005, Plaintiff executed a Note and Mortgage in conjunction with a loan from Washington Mutual Bank ("WaMu") in the amount of $633,750.00 (the "Loan"). Am. Compl., Ex. 11.[4] On September 25, 2008, Chase acquired certain assets and liabilities of WaMu, including Plaintiff's Loan, from the Federal Deposit Insurance Corporation ("FDIC"), as receiver for WaMu.[5] *Id.* at 18. Plaintiff claims that Chase has "wrongfully claimed to own 'certain assets'

---

[3] The specific factual allegations in the Amended Complaint are, at times, unclear. However, a somewhat more complete picture is made possible when considering the Amended Complaint in conjunction with the exhibits attached to the pleading and attached to Defendants' motion to dismiss. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an indisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, the Court derives the relevant facts from Plaintiff's Amended Complaint, as well as the exhibits attached to the Amended Complaint, Plaintiff's Brief in Opposition to the Motion to Dismiss ("Pl. Opp. Br."), and Defendants' motion to dismiss ("Defs. Br.").

[4] Plaintiff's Amended Complaint contains only two exhibits, as opposed to the thirteen exhibits attached to the original Complaint. However, the two exhibits attached to the Amended Complaint are labeled "Exhibit 18" and "Exhibit 19" respectively, suggesting Plaintiff intended to incorporate the other exhibits into his Amended Complaint. As such, because Plaintiff is proceeding *pro se*, the Court accepts the earlier exhibits (attached in D.E. 1) as part of Plaintiff's Amended Complaint (D.E. 44).

[5] Plaintiff acknowledges Chase's acquisition of certain assets and liabilities of WaMu, but contests that his Loan was included. Plaintiff asserts this is a "presumption" because "Chase has offered no proof that Plaintiff's loan was included in that purchase." Am. Compl. at 2. In their brief, Defendants cite to "Docket Entry 23-2, Declaration of Evan Sampson ¶¶ 2-4" to support this factual assertion. Defs. Br. at 2. Mr. Sampson's Declaration will be referred to hereinafter as "Sampson Decl." Specifically, Exhibit A is a copy of the order appointing the FDIC as receiver for WaMu. Sampson Decl. at ¶ 2. Exhibit B is a copy of the letter from the FDIC accepting its appointment as receiver for WaMu. *Id.* at ¶ 3. Exhibit C is a copy of the Purchase and Assumption Agreement between JPMorgan Chase and the FDIC as receiver of WaMU, where JPMorgan Chase

(including Plaintiff's indebtedness)" because they were not properly assigned to Chase. *Id.* at 4. Specifically, Plaintiff claims that "[g]overnment records from SEC show the 10-K filings for 'Washington Mutal, Inc.' . . . listed as having ceased existence on 4/4/2005" and "[WaMu] no longer existed on the date of Plaintiff's contract." *Id.* at 12. As such, according to Plaintiff, "the contract did not legally exist, because the 'Lender' was a fiction." *Id.* at 12.

By September 25, 2008, Plaintiff's loan was in default. *Id.* at 22. Defendants pinpoint the date as September 1, 2008, when Plaintiff "fail[ed] to make a payment that became due and owing." Defs. Br. at 2; Sampson Decl. at ¶ 5. As a result, Plaintiff claims that he was "coerced into signing [a] fraudulent 'modification' [of the mortgage agreement]." Am. Compl. at 21. Defendants state that as a result of Plaintiff's default, Chase brought a foreclosure action in state court. Defs. Br. at 3; Sampson Decl. at ¶ 5. As a resolution to the case, Plaintiff and Chase executed a Loan Modification Agreement in July 2010, which took effect on September 1, 2010. Am. Compl., Ex. 12. Plaintiff alleges that, when he was in default, Chase "coerced Plaintiff, under threat of eviction, to agree to the further unconscionable terms of the 'modified' loan." Am. Compl. at 5.

Plaintiff concludes that "Chase is a 'stranger to his debt,' has no agency/capacity/standing to collect or foreclose, and Plaintiff has been forced to pay a party who is neither holder or an entity for a holder, with legal right to his payments." *Id.* at 25. Plaintiff indicates that he has "suffered immense physical and emotional injury from the magnitude of the stress he has been

---

purchased "substantially all of the assets … and substantially all other liabilities of the Failed Bank." *Id.* at ¶4.

forced to live under." *Id*. at 3. Finally, Plaintiff requests that all relief requested in the original Complaint be granted. Pl. Opp. Br. at 15.[6]

## II. PROCEDURAL HISTORY

On June 27, 2016, Plaintiff filed his original Complaint. D.E. 1. On August 23, 2016, Defendants filed a motion to dismiss. D.E. 23. On March 24, 2017, the Court entered an Opinion and Order ("Original Opinion" and "Dismissal Order") dismissing the Complaint's RICO, False Claims Act ("FCA"), and Truth in Lending Act ("TILA") claims without prejudice, and dismissing all remaining claims with prejudice.[7] D.E. 41, 42. Plaintiff was provided thirty days to file an amended complaint as to the civil RICO, FCA, and TILA claims. D.E. 41, 42.

On April 20, 2017, Plaintiff filed an Amended Complaint. D.E. 44. In the Amended Complaint, Plaintiff asserted the following counts: (1) a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC § 1961, *et seq*.; (2) a violation of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J.S.A. §56:8-1, *et seq*.; (3) a claim of common law fraud; and (4) a claim of equitable estoppel.[8]

---

[6] The relief requested in the Original Complaint included (1) granting a monetary award from each Defendant, wholly and individually; (2) requiring Chase to return every principal and interest payment since the loan was executed in 2005 with interest; (3) imposing Dodd-Frank penalties on Chase; (4) awarding punitive damages; (5) awarding reasonable costs associated with the litigation including legal expenses; and (6) demanding a recording of Plaintiff's mortgage as "satisfied" in the Monmouth County recording office and granting quiet title.

[7] The Court dismissed the following counts with prejudice: (1) violation of 18 USC §241: Conspiracy Against Rights; (2) violation of 18 USC §242: Deprivation of Rights Under Color of Law; (4) violation of 28 USC §1331 Federal Question; (6) violation of 15 USC §1629 Fair Debt Collection Practices Act ("FDCPA"); (7) violation of the Real Estate Settlement Procedures Act ("RESPA"); and (8) "white collar crime." D.E. 41, 42.

[8] While Plaintiff does not formally number his claims, the Court will, for efficiency, refer to these claims as follows: the RICO claim will be "Count One"; the CFA claim will be "Count Two"; the common law fraud claim will be "Count Three"; and the equitable estoppel claim will be "Count Four."

On June 2, 2017, Defendants filed a motion to dismiss the Amended Complaint. D.E. 47. On June 20, 2017, Plaintiff filed opposition, D.E. 48, to which Defendants replied, D.E. 49. Plaintiff then filed another brief in opposition on June 27, 2017. D.E. 50. On July 24, 2017, Plaintiff also filed a "Motion for Judicial Intervention," D.E. 52, and Defendants filed opposition on August 7, 2017. D.E. 53. Lastly, on November 1, 2017, Plaintiff filed a motion to strike and request for sanctions. D.E. 61. On November 15, 2017, Defendants filed opposition. D.E. 62.

## III. STANDARD OF REVIEW

### a. Rule 12(b)(1)

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed. A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)). When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is generally considered a facial attack. *Bellocchio v. New Jersey Dep't of Envtl. Prot.*, 16 F. Supp. 3d 367, 373-74 (D.N.J. 2014) (citing *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)), *aff'd*, 602 F. App'x 876 (3d Cir. 2015). Filing a motion to dismiss in lieu of filing an answer "assert[s] that [P]laintiff's complaint, on its face, does not allege sufficient [facts] ... to warrant the court in taking jurisdiction." *Cardio-Med. Assocs.*, 721 F.2d at 75.

For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund*,

*Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). The burden is on the Plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. *See Id.* "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa.*, 757 F.3d at 360. To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' *i.e.*, an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, *i.e.*, traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Gov. of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013).

### b. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

Because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds him to a less stringent standard than those filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "Court need not ... credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino v. CECOM RDEC*, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010).

## IV. ANALYSIS

Defendants first argue that the Amended Complaint should be dismissed with prejudice because it fails to comply with the Court's Dismissal Order. Defs. Br. at 5. Defendants contend that the Dismissal Order was narrowly focused, permitting Plaintiff to only remedy defects with the RICO, FDCPA, and TILA claims. *Id.* Alternatively, Defendants claim that the Amended Complaint should be dismissed for lack of subject-matter jurisdiction under Federal Rule 12(b)(1). *Id* at 5-6. Finally, Defendants assert that the Amended Complaint should be dismissed for failing to state a claim pursuant to Federal Rule 12(b)(6). *Id.* at 7-20.

### a. Claims from Plaintiff's Original Complaint

As an initial matter, in providing the Plaintiff the opportunity to amend his Complaint as to the FCA, FDCPA, and TILA claims, the Court stipulated the elements Plaintiff would have to identify. Original Opinion at 8-13. The Court first considers these claims.

### 1. FCA Claim

To establish an FCA violation, a plaintiff must allege that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *In re Plavix Mktg. Sales Practice & Prod. Liab. Litig.*, 123 F. Supp. 3d 584, 600 (D.N.J. 2015). While a private party may bring a suit pursuant to the FCA, he must allege that there was a false statement made to the government. *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016). Indeed, the Court noted that the objective of the FCA is to "protect the funds and property of the *Government* from fraudulent claims." Original Opinion at 9 (emphasis in original) (quoting *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 183 (3d Cir. 2001)).

The Court previously found that from the facts in the original Complaint, it did not appear that the Government was involved in any capacity. Original Opinion at 10. In providing Plaintiff an opportunity to re-plead this claim, the Court required him to identify the requisite government involvement. *Id.* Reviewing the Amended Complaint, Plaintiff has not sufficiently done so. Plaintiff does not directly address the FCA claim. Plaintiff only briefly mentions government agencies like the SEC or FDIC, and when he does, he discusses them in the context of prior cases and actions. Am. Compl. at 11-12. For example, Plaintiff alleges that Defendant admitted to unsavory practices before the SEC. Am. Compl. at 10-11. Regardless of whether this allegation has merit, it is irrelevant to Plaintiff's FCA claim. The alleged practices did not include fraudulent

claims for payment presented to the Government. Nowhere in the Amended Complaint, or in subsequent filings, does Plaintiff provide plausible facts suggesting that Defendant attempted to defraud the government. Therefore, because Plaintiff again failed to sufficiently plead any government involvement, the Court dismisses the FCA claim with prejudice.

### 2. FDCPA Claim

To state a claim under the FDCPA, Plaintiff must establish that "(1) he or she is a 'consumer' who is harmed by violations of the FDCPA; (2) the 'debt' arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a 'debt collector'; and (4) the defendant has violated, by act or omission, a provision of the FDCPA." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 583-84 (D.N.J. Oct 31, 2016) (quoting *Berk v. J.P.Morgan Chase Bank, N.A.*, No. 11-2715, 2011 WL 4467746, at *3 (E.D. Pa. Sept. 26, 2011) (citing 15 U.S.C. §§ 1692a-o)). The Court noted in its Original Opinion that, while a "debt collector" is broadly defined under the statute, there is an exclusion for "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." Original Opinion at 10-11 (citing 15 U.S.C. § 1692a(6)(A)). As such, a bank, acting as a creditor, may "collect its own debts, in its own name, without subjecting itself to the provisions of FDCPA." *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 184 (D.N.J. 2012). The Court concluded that each bank owned Plaintiff's mortgage during the period they were collecting payments, and thus were not included in the definition of "debt collector" under the FDCPA. Original Opinion at 11. The FDCPA claim was dismissed with prejudice. *Id.*

However, the concluding language of the Original Opinion incorrectly stated the FDCPA was dismissed without prejudice, suggesting Plaintiff could attempt to re-plead the claim. Original Opinion at 13. Despite this, Defendants correctly point out in their brief that Plaintiff never

mentions the FDCPA claim in his Amended Complaint. Defs. Br. at 5. After this was pointed out, Plaintiff mentioned the FDCPA claim in his second opposition brief. Plaintiff argued that the FDCPA claim was supported because "Defendants do not, and cannot in the future, 'own' Plaintiff's indebtedness." Pl. Opp. Br. at 7. However, as noted in the Court's Original Opinion dismissing this claim with prejudice, Plaintiff offers no proof of another lender owning his loan or trying to collect payments. *See* Original Opinion at 11. Plaintiff does not address the issue that Defendants do not qualify as "debt collectors" under the FDCPA criteria. Therefore, the Court again dismisses the FDCPA claim with prejudice.

### 3. TILA Claim

TILA requires a creditor to maintain documents showing compliance with the regulations promulgated pursuant to the statute for two years "after the date disclosures are required to be made or action is required to be taken." *See* 12 C.F.R. 226.25. In his Original Complaint, Plaintiff merely cited to the statute without providing any factual allegations to support the citation. The Court determined that Plaintiff had not plausibly identified that Defendants' violated the regulation, but afforded Plaintiff the opportunity to re-plead this claim. Original Opinion at 11.

The Amended Complaint does not mention the TILA claim. Defendants argue that Plaintiff failed to meet the requirements set forth by the Court to re-plead this claim. Defs. Br. at 5. Plaintiff subsequently mentions the TILA claim in his opposition, once again arguing that the claim is supported because Defendants cannot own Plaintiff's indebtedness. Pl. Opp. Br. at 7. Additionally, Plaintiff contends, without elaboration, that all records relating to the TILA allegation are false. *Id.* Because the first argument was already rejected, and the second argument is conclusory, the Court again finds that Amended Complaint does not plausibly plead that Defendants violated TILA. Accordingly, Plaintiff's TILA claim is dismissed with prejudice.

### b. Plaintiff's Claims in His Amended Complaint (Counts One, Two, Three, Four)

The last claim that was dismissed without prejudice in the Court's Original Opinion was Plaintiff's civil RICO claim, referred to here as Count One. Plaintiff does attempt to re-plead Count One. However, Plaintiff also attempts to bring three new counts in his Amended Complaint: a violation of the New Jersey Consumer Fraud Act (Count Two); a claim of common law fraud (Count Three); and a claim of equitable estoppel (Count Four). As noted, Defendants argue that the new claims exceed the scope of the Dismissal Order. Defs. Br. at 5. The Court acknowledges that the language of the Dismissal Order restricts the Amended Complaint to re-pleading claims dismissed without prejudice. However, in light of Plaintiff's *pro se* status, the Court will consider not only Plaintiff's re-plead civil RICO claim (Count One)but also the new claims (Counts Two, Three, and Four).

### 1. Standing

Defendants first argue that "Plaintiff lacks constitutional standing to challenge Chase's ownership or authority over the Loan." Defs. Br. at 6. Constitutional standing requires a plaintiff to show an injury-in-fact, by alleging "the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Finkelman v. NFL*, 877 F.3d 504, 510 (3d Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016)). It is well established that a borrower does not have standing to sue for an alleged illegal assignment of his mortgage. *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (finding that borrowers have no standing to allege a defect in the assignment of their mortgages); *Perez v. Jpmorgan Chase Bank, N.A.*, No. 14-2279, 2016 WL 816752, at *3 (D.N.J. Feb. 29, 2016) ("Courts in the Third Circuit have repeatedly held mortgagors lack standing to contest the assignment of their mortgages[.]"). Courts have found that

there is no concrete injury to a borrower when their mortgage is assigned. *See Bauer*, 618 F. App'x at 149 (finding that a borrower had not suffered a "concrete injury" when he did not allege that he was required to pay his loan twice); *Rajamin*, 757 F.3d at 85 (holding that borrowers did not suffer an injury when they did not allege they had paid more than they owed and were in no imminent danger in having to pay duplicate loans).

In its Original Opinion, the Court determined that to the extent Plaintiff argues that the assignment of his mortgage from WaMu to Chase was invalid or 'without operation in law,' Plaintiff did not have standing to make that claim. Original Opinion at 7. The Court noted that Plaintiff never alleged that he paid Defendants more than the amount due, that he was in danger of having to make duplicate loan payments, or that there had ever been an entity other than Chase demanding payment on the loan after Chase acquired Plaintiff's Loan. *Id.* The Court concluded that Plaintiff did not have standing to pursue any claims in which he was alleging a defect in the assignment of his loan from WaMu to Chase. *Id.* at 8. However, the Court did not end its analysis on standing because the Court was unsure whether Plaintiff's claims rested solely on the assignment of his mortgage. *Id.*

After reviewing the Amended Complaint and subsequent filings by both parties, the Court is now confident that Plaintiff's claims rest solely on the assignment of his mortgage. Defendants claim that "the Plaintiff repeatedly and unambiguously asserts that Chase 'has never been the beneficiary on the Plaintiff's loan. Chase has failed to offer any proof of ownership.'" Defs. Br. at 5-6 (quoting Am. Compl. at 17). Indeed, the Court notes that twenty-one out of twenty-six pages of the Amended Complaint either directly or indirectly reference the assignment of the mortgage. Am. Compl. at 2-4, 6-10, 12, 14-25. Further, in Plaintiff's fifteen-page "Reply Motion to Improper Enlargement of Time and Motion to Dismiss Amended Complaint" submission, he

references the assignment on ten pages. Pl. Opp. Br. at 1-10. Finally, in Plaintiff's seven-page "Opposition to Second Illegal Motion to Dismiss Oral Argument Necessary if Justice is to Prevail" submission, he references the assignment on five pages. Pl. Resp. at 2-6. While the amount of references alone does not suffice to establish the assignment as the sole basis for Plaintiff's remaining claims, the manner in which the assignment is referenced prove telling.

In his Amended Complaint, Plaintiff devotes a section to standing. Plaintiff first argues that he "is legally and contractually bound by the 'BORROWER COVENANTS' clause on pg. 3 of his contract, to defend the title to his property from any/all *invalid and illegal assignments*." Am. Compl. at 2 (emphasis added). Plaintiff continues by asserting he has suffered an injury in fact when he was "injured by his reliance that WAMU, then Chase, would follow government mandates and have actual 'right to enforce' his contract, and continued paying a 'stranger' to his debt." Am. Compl. at 3. Thus, in arguing he does have standing, Plaintiff bases his entire injury-in-fact argument on his contention that Chase does not have the right to collect the mortgage because it resulted from an illegal assignment. Later in his Amended Complaint, Plaintiff again makes clear that his injury-in-fact argument rests on his belief that the assignment was invalid. Am. Compl. at 9. (asserting, among other things, that Plaintiff "does have standing to challenge an assignment that renders his indebtedness 'void.'"). Plaintiff makes similar assertions several times throughout the Amended Complaint. Am. Compl. at 14, 22, 24-25. However, as noted above and in the Original Opinion, the law is clear Plaintiff does not have standing to allege a defect in the assignment of his mortgage.

Additionally, Plaintiff makes clear that the assignment of his mortgage forms the basis of the four remaining counts brought in the Amended Complaint. First, when discussing Count One, Plaintiff writes that he is "INCREDULOUS" at Defendants' assertion that there was no pattern of

illegal activity. Am. Compl. at 16. Plaintiff immediately follows by claiming, "Chase 'claims' ownership of Plaintiff's indebtedness is/was based on fraudulent documents." Am. Compl. at 16. Plaintiff then declares that "WAMU failed to properly 'assign' mortgages, and now Chase is illegally 'fixing' the errors." Am. Compl. at 19. Thus, Plaintiff indicates that the requisite illegal activity for the RICO claim stems from the assignment of his mortgage.

As to Count Two, Plaintiff lists the three elements necessary to bring a NJCFA claim, including unlawful conduct by the Defendants. Am. Compl. at 4. Immediately after providing the elements, Plaintiff declares that "Chase has wrongfully claimed to own 'certain assets' (including Plaintiff's indebtedness) that it's predecessors in interest, FDIC and/or WAMU, did not own and thus did not assign to Chase." Am. Compl. at 4. This sentence is in bold font in the Amended Complaint.

Concerning Count Three, Plaintiff begins by listing the five elements of common law fraud. Am. Compl. at 21. After noting the first element, Plaintiff states, "Chase claims to own Plaintiff's indebtedness, but refuses to produce any 'clear and positive evidence' to support that claim." Am. Compl. at 21. Additionally, under the fifth element, Plaintiff asserts, "Plaintiff continues paying on a non-existent indebtedness." Am. Compl. at 21. Thus, in alleging fraud, Plaintiff's claims of a false statement and a resultant injury rest entirely on his belief that the assignment of his mortgage was defective.

As to Count Four, Plaintiff again begins by listing the elements of equitable estoppel. Am. Compl. at 6. But due to the lack of clarity, it is difficult to ascertain exactly what the driving argument of his equitable estoppel claim is. Yet Plaintiff does assert, again in bold lettering, that "[m]ost importantly, [n]o matter how many times Chase 'says' they own Plaintiff's indebtedness,

they cannot support that claim with mandated 'clear and positive evidence.'" Am. Compl. at 9.

Thus, it is clear that Plaintiff again basis his argument around the assignment of the mortgage.[9]

Therefore, because Plaintiff's claims rest solely on the assignment of his mortgage, the Court dismisses Plaintiff's remaining claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

### 2. Failure to State a Claim

Because Plaintiff is proceeding *pro se*, the Court will also briefly address the merits of each of Plaintiff's claims. In sum, the Court determines that in the alternative, even if Plaintiff had standing, he fails to sufficiently plead any valid causes of action.

### i. Count One (Civil RICO)

The RICO claim indicates that Defendants "have been actively engaged as an 'enterprise,' committing 'predicate acts,' and that Plaintiff is just one of their many 'targets.'" Am. Compl. at 20. Plaintiff elaborates on the "predicate acts" by alleging that Defendants have (1) committed "mail fraud by sending 'Statements' demanding payment, monthly, on a non-existent debt," (2) "committed 'wire fraud' by falsely promising to 'modify' Plaintiff's loan at a rate he could afford," and (3) "committed 'bank fraud' by destroying and/or altering bank documents." *Id.* Defendants respond that the Amended Complaint fails to articulate a cause of action under RICO because "there is no allegation of a pattern of illegal activity." Defs. Br. at 13. Defendants assert that "at

---

[9] Of note, in analyzing standing in the Original Opinion, the Court noted that "[i]mportantly, Plaintiff does not allege that he ever paid Defendants more than the amount due, that he was in danger of having to make duplicate loan payments, or that there had been an entity other than Chase demanding payment on the loan after Chase acquired Plaintiff's Loan." Original Opinion at 7. On page 15 of the Amended Complaint, Plaintiff writes: "[i]t matters not what amount Defendants claim is due, whether he has ever been demanded to pay multiple parties, or that any other entity demands payment. Those claims are not matters at bar. Chase NEVER purchased nor assumed any residential mortgage loans." Am. Compl. at 15. This allegation contradicts the Original Opinion, and Plaintiff provides no authority to support his claim.

its heart, the Amended Complaint relates to a single, contractual relationship between the Plaintiff and the Defendants: the "Loan," and, "by relying solely on past news reports concerning *civil* and *regulatory* actions to justify a pattern of illegal activity, the Plaintiff failed to identify a *continuing* threat of *criminal* activity. *Id.* at 14-15 (emphasis in original).

To bring a Civil RICO claim, a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998) (citing *Sedima v. Imrex Co.*, 473 U.S. 479 (1985)). To establish a "pattern of racketeering," a plaintiff must allege "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *20 (D.N.J. May 2, 2013). These acts must be "more than a series of separate, isolated, or disconnected acts." *Irish v. Ferguson*, 970 F. Supp. 2d 317, 346 (M.D.Pa. 2013). A "single, finite transaction cannot by itself underpin a pattern of racketeering activity." *Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 365 (3d Cir. 2010).

In its Original Opinion, the Court dismissed the Civil RICO claim after finding Plaintiff's allegations stem solely from his Loan with WaMu and then Chase, and that this allegation was insufficient to constitute a pattern of racketeering. Original Opinion at 9. After reviewing the Amended Complaint, the Court again finds that Plaintiff's allegations stem entirely from the Loan and that this is insufficient to establish a pattern of racketeering. Plaintiff claims that "Defendants have repeatedly been fined/penalized/sanctioned for the exact acts they are/were employing against this Plaintiff." Am. Compl. at 15. Plaintiff provides a statement from Bill Nettle, the United States Attorney for the District of South Carolina, discussing a settlement with the nation's four largest mortgage servicers, including J.P Morgan Chase. *Id.* By providing a past settlement, Plaintiff attempts to strengthen his claim that Chase committed similar acts here. However, as the

Court stated in its Original Opinion, Plaintiff cannot use prior court cases and government actions to support his claim as it currently stands. *See* Original Opinion at 10. Additionally, Plaintiff goes on to state that "Plaintiff is only concerned with the 'predicate acts' involving him." Am. Compl. at 15. Indeed, when Plaintiff alleges "mail fraud," "wire fraud," and "bank fraud," he discusses them in the context of his single loan transaction with Defendants. Plaintiff never moves beyond "a single, finite transaction," and does not meet the requirements for a Civil RICO claim. Therefore, Count One is dismissed with prejudice.

### ii. Count Two (NJCFA)

Plaintiff also brings a claim pursuant to the NJCFA. Specifically, Plaintiff claims that he was "a victim of unconscionable processes employed by Chase that are unfair or fraudulent business acts or practices." Am. Compl. at 5. Plaintiff claims that Defendants assured him repeatedly that he "would be granted a 2.46% interest rate for 480 months in a refinancing agreement," but that Defendants "at the 11th hour, 59th minute, coerced Plaintiff, under threat of eviction, to agree to the further unconscionable terms of the 'modified' loan." *Id.* Defendants respond that "the modification of the Loan cannot represent an illegal act for the purposes of the CFA," and that Plaintiff failed to "specifically describe any misrepresentation or omission allegedly made by any of the Defendants." Defs. Br. at 11-12.

The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-1. To bring a claim under the NJCFA, a plaintiff must allege: "(1) an unlawful practice; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's

unlawful conduct and the plaintiff's ascertainable loss." *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 114 (App. Div. 2005). In regards to the unlawful practice element, "courts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012).

In determining whether the act in question is conduct barred by the NJCFA, the New Jersey Supreme Court recognized that "no hard and fast rules exist," but "mere puffery does not constitute consumer fraud . . . [and] [m]inor disagreements between consumer and business owner over quality of customer service, timing of service, or increased price is not consumer fraud." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995). Rather, to rise to the level of consumer fraud, "the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Id.*

Additionally, the term "ascertainable loss" means that a "plaintiff must suffer a definite, certain, and measurable loss, rather than one that is merely theoretical." *Heyert v. Taddese*, 431 N.J. Super. 388, 417 (App. Div. 2013). Indeed, "the certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Finally, "[c]laims of common law fraud and consumer fraud under New Jersey law are held to the higher pleading standard of Rule 9(b)." *Schiano v. MBNA*, No. 05-1771, 2014 WL 1430034, at *5 (D.N.J. Apr. 9, 2014). Federal Rule of Civil Procedure 9(b) stipulates that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Third Circuit has interpreted this Rule to require plaintiffs "plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999).

Here, Plaintiff fails to meet the NJCFA's heightened pleading requirement. First, Plaintiff alleges that the "unlawful practice" in this case stems from Defendants' representations surrounding the modification of the loan agreement. However, the modification of an existing loan is a reasonable business practice. While there appears to be disagreement over the fairness of the terms of the modification, Plaintiff does not sufficiently plead that they were "outside the norm of reasonable business practice." Additionally, any non-economic losses Plaintiff allegedly suffered are not recoverable under the NJCFA because they are not quantifiable or measurable. *Thiedemann*, 183 N.J. at 248. Therefore, Plaintiff does not meet the heightened pleading standard to bring a claim under the NJCFA, and Count Two is dismissed with prejudice.

### iii. Count Three (Common Law Fraud)

To state a claim of common law fraud, "a plaintiff must show that defendant: (1) made a representation or omission of a material fact; (2) with knowledge of its falsity; (3) intending that the representation or omission be relied upon; (4) which resulted in reasonable reliance; and that (5) plaintiff suffered damages." *DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 430 N.J. Super. 325, 336 (App. Div. 2013). Further, a claim of common law fraud "must be proven through clear and convincing evidence." *Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J. Super. 388, 395 (App. Div. 1989). Additionally, Rule 9(b)'s more rigorous pleading requirement applies because it is a claim of common law fraud. *Schiano v. MBNA,* No. 05-1771, 2014 WL 1430034, at *5 (D.N.J. Apr. 9, 2014).

In addressing the five elements, Plaintiff claims that (1) "Chase claims to own Plaintiff's indebtedness"; (2) "Chase absolutely knows their claims are false"; (3) "Chase has perpetrated this fraud on Plaintiff since the PAA, to conceal the truth from Plaintiff"; (4) "Plaintiff has relied on Chase's false statements"; and (5) "Plaintiff continued paying on a non-existent indebtedness."

Am. Compl. at 21. Defendants respond that "there is no indication of any misrepresentation" because the entire premise of the Amended Complaint is that "Chase is fraudulently demanding repayment for the Loan," but that "the undisputed evidence demonstrates that Plaintiff received the Loan proceeds from WaMu to purchase the Property, and executed a Note and Mortgage to WaMu … [and t]hereafter, the Loan was acquired by Chase." Defs. Br. at 18. Defendants further respond that Plaintiff has not suffered any damages because "the *status quo* has remained in effect since the Plaintiff entered into the Loan Modification Agreement" and because "Plaintiff has been allowed to remain in possession of the Property." *Id.*

The Court finds that Plaintiff does not plausibly plead an action for common law fraud. For each element, Plaintiff mainly relies on his belief that the loan assignment was invalid, and that Defendants were perpetuating a fraud upon him by seeking payment. However, the Court has already determined that Plaintiff has no standing to allege an illegal assignment of his mortgage. With that in mind, Plaintiff fails to satisfy the first element requiring that Defendants made a false statement of a material fact by simply stating that "Chase claims to own Plaintiff's indebtedness." Defs. Br. at 18. Without elaboration, Plaintiff does not sufficiently identify why this constitutes a false statement of a material fact. Further, Plaintiff does not sufficiently detail an injury as a result of a false statement. Because Plaintiff remained in possession of the property purchased with the loan, the only "loss" he points to is his monthly payments on the loan. However, because Plaintiff admits to entering the initial loan agreement, and because Plaintiff has not plead (1) that he ever paid Defendants more than the amount due, (2) that he was in danger of having to make duplicate loan payments, or (3) that there had been an entity other than Chase demanding payment on the loan after Chase acquired Plaintiff's Loan, this is not a valid injury. Accordingly, Plaintiff fails to

plausibly plead the elements required for common law fraud, and Count Three is dismissed with prejudice.

### iv. Count Four (Equitable Estoppel)

A claim of estoppel requires a plaintiff to show: "(1) a misrepresentation by another party; (2) which [he] reasonably relied upon; (3) to [his] detriment." *Leese v. Adelphoi Vill., Inc.*, 516 F. App'x 192, 194 (3d Cir. 2013). However, the doctrine of estoppel is generally disfavored and "is applied only in very compelling circumstances." *Davin, L.L.C. v. Daham*, 329 N.J. Super. 54, 67 (App. Div. 2000).

Plaintiff claims that "[a] question of fact remains for trial as to whether Chase made false promises with fraudulent intent." Am. Compl. at 6. Defendants respond that "[a]s held in the Dismissal Order, the 'Plaintiff does not allege that he ever paid Defendants more than the amount due, that he was in danger of having to make duplicate loan payments, or that there had been an entity other than Chase demanding payment on the loan after Chase acquired Plaintiff's Loan.'" Defs. Br. at 16 (citing Original Opinion, D.E. 41 at 7). Indeed, Defendants conclude that "the Plaintiff cannot be fraudulently induced into making payments that he was contractually obligated to pay to the only entity demanding payment because the Plaintiff voluntarily entered into the Loan Modification Agreement." *Id.*

The Court agrees and notes that Plaintiff's argument under this claim closely resembles his arguments regarding common law fraud. In both instances, the claims rest on Plaintiff's belief that Defendants misrepresented facts about the loan and Plaintiff was injured as a result. As such, the Court need not duplicate the analysis here, but reiterates that Plaintiff does not plead that he was required to pay more than the loan stipulated, has not been required to pay duplicate payments, and has not been required to pay to more than one mortgagor. Further, Plaintiff does not plausibly

plead that he suffered any cognizable injuries. Accordingly, Count Four is not sufficiently alleged and it is dismissed with prejudice.

## V. CONCLUSION

When dismissing claims brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with prejudice or without prejudice, the latter allowing a plaintiff to correct any deficiencies in their complaint. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-111 (3d Cir. 2002). Typically, district courts will deny leave to amend only if: (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) the amendment would be futile. *Adams v. Gould, Inc.,* 739 F.2d 858, 864 (3d Cir. 1984). Here, the Court determines that further amendment of Plaintiff's Amended Complaint would be futile. Plaintiff's claims all depend on an alleged illegal assignment of his mortgage. Plaintiff has no standing to bring these claims and further amendment of his pleadings will not change this analysis. Accordingly, the Court GRANTS Defendants' motion to dismiss all counts with prejudice (D.E. 47). Additionally, Plaintiff's "Motion for Immediate Judicial Intervention" (D.E. 52), "Motion to Strike . . . and Request for Sanctions" (D.E. 61), and motion for summary judgment (D.E. 63) are dismissed as moot. An appropriate Order accompanies this Opinion.

**Date:** April 18, 2018

John Michael Vazquez, U.S.D.J.